**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 100% SPEEDLAB, LLC and SAULE, LLC,<br><br>     Plaintiffs,<br><br> v.<br><br>THE INDIVIDUALS, CORPORATIONS,<br>LIMITED LIABILITY COMPANIES,<br>PARTNERSHIPS, AND<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE A TO THE<br>COMPLAINT,<br><br>     Defendants. | Case No. 1:26-cv-5566<br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs, 100% Speedlab, LLC ("Speedlab") and Saule, LLC ("Saule") (together, "Plaintiffs"), hereby allege as follows against the individuals, corporations, limited liability companies, partnerships, unincorporated associations, and foreign entities identified on Schedule A[1] to this Complaint (collectively, "Defendants"):

**INTRODUCTION**

1.     This action has been filed by Plaintiffs to combat online counterfeiters who trade on Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Saule's registered trademarks, which include but are not limited to the following: U.S. Trademark Registration Nos. 4,112,054; 4,140,306; 4,455,791; 4,740,495; 4,832,739; 5,486,069; 5,856,837; 5,946,141; 5,955,540; and 6,248,245 (collectively, the "100% Trademarks" or "Plaintiffs' Trademarks"). Saule owns all right, title, and interest in and to Plaintiffs' Trademarks.

---

[1]     Plaintiffs are simultaneously filing a motion to temporarily seal Schedule A with the filing of this Complaint.

Plaintiffs' Trademarks are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for Plaintiffs' Trademarks are attached as **Exhibit 1**.

2.     This is also an action for patent infringement to combat e-commerce store operators who trade upon Plaintiffs' reputation and goodwill by making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use, unauthorized and unlicensed products that infringe Speedlab's granted design patents, which include but are not limited to the following: U.S. Patent Nos. US D727,398 S; US D727,400 S; US D756,445 S; and US D860,302 S (collectively, the "100% Patents" or "Plaintiffs' Patents"). Plaintiffs' Patents are valid, subsisting, and in full force and effect. Speedlab is the owner and lawful assignee of all right, title, and interest in and to Plaintiffs' Patents, which were duly and legally issued by the U.S. Patent and Trademark Office. A true and correct copy of Plaintiffs' Patents are attached as **Exhibit 2**.

3.     Speedlab holds an exclusive license from Saule to use the 100% Trademarks (together, with the 100% Patents, the "100% IP" or "Plaintiffs' IP").

4.     Defendants are improperly advertising, marketing, and/or selling unauthorized and illegal products by reference to marks identical or substantially identical to Plaintiffs' Trademarks and/or that embody the design(s) depicted in Plaintiffs' Patents (the "Counterfeit Products").

5.     Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A (collectively, the "Defendant Internet Stores"), including on the platforms eBay, Shein, Temu, and TikTok (collectively, the "Marketplace Platforms").

6.     Defendants design their online marketplace accounts to appear to be selling genuine products bearing Plaintiffs' Trademarks, using marks identical to or confusingly similar to

2

Plaintiffs' Trademarks, and/or embodying Plaintiffs' Patents ("Plaintiffs' Products") while selling inferior imitations of such products.

7.     The Defendant Internet Stores share unique identifiers, such as design elements and similarities to the Counterfeit Products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

8.     In an attempt to avoid liability, Defendants go to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of the Plaintiffs' Trademarks and infringement of Plaintiffs' Patents, as well as to protect consumers from unknowingly purchasing Counterfeit Products.

9.     As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged from the loss of the exclusivity of their valuable intellectual property rights, including the right to work with authorized retailers, as well as by and through consumer confusion, dilution, and tarnishment of Plaintiffs' Trademarks, and, therefore, seeks injunctive and monetary relief.

10.     This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in New York and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in New York and in this Judicial District.

11.     In addition, each Defendant has offered to sell and ship and/or sold and shipped counterfeit and infringing products into this Judicial District.

## SUBJECT MATTER JURISDICTION

12.     This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 *et seq*., and 28 U.S.C. §§ 1331, 1338(a)–(b).

13.     This Court has original subject matter jurisdiction over the patent infringement claims arising under the patent laws of the United States pursuant to 35. U.S.C. § 1 *et seq*., and 28 U.S.C. §§ 1331, 1338(a).

14.     This Court has jurisdiction over the unfair deceptive trade practices claims in this action that arise under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## PERSONAL JURISDICTION AND VENUE

15.     Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and (3), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact, and/or solicit business in New York and in this Judicial District; derive substantial revenue from business transactions in New York and in this Judicial District; and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

16.     In addition, because Plaintiffs sell genuine merchandise and apparel bearing Plaintiffs' Trademarks and/or embodying Plaintiffs' Patents in this Judicial District, Defendants' illegal counterfeiting and infringing actions have injured Plaintiffs in this Judicial District through lost sales and customers. Defendants' actions have also harmed Plaintiffs by confusing and

deceiving consumers in this Judicial District who can view Defendant Internet Stores such that Defendants should reasonably expect such actions to have consequences in New York and this Judicial District.

17.    For example, Defendant Internet Stores accept orders for Counterfeit Products from, and offer shipping to, New York addresses located in this Judicial District. Exemplar screenshots of the shopping cart from Defendant Internet Stores allowing Counterfeit Products to be shipped to this Judicial District are attached as Exhibit 3 to the Declaration of Ludo Boinnard.

18.    Upon information and belief, Defendants also were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including those in New York and in this Judicial District, through accounts (the "User Account(s)") on e-commerce sites including the  Marketplace Platforms, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants, and all persons in active concert or participation with any of them. Through these User Accounts, consumers in the United States, including New York and this Judicial District, can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products, and to place orders for, receive invoices for, and purchase Counterfeit Products for delivery in the United States, including New York and this Judicial District, as a means for establishing regular business with the United States, including New York and this Judicial District.

19.    Defendants have transacted business with consumers located in the United States, including New York and this Judicial District, for the sale and shipment of Counterfeit Products.

20.     Venue is proper in this Court pursuant to at least 28 U.S.C. §§ 1391(b)(2) and 1400(b) because Defendants have committed acts of trademark and patent infringement in this Judicial District and do substantial business in this Judicial District.

**THE PLAINTIFFS**

21.     Plaintiff Saule is a limited liability company organized and existing under the laws of California with its principal place of business in San Diego, California.

22.     Plaintiff Speedlab is a limited liability company organized under the laws of California with its principal place of business in San Diego, California.

23.     Saule is the owner of Plaintiffs' Trademarks (attached as Exhibit 1), as follows:

| U.S. TM Reg. No. | Trademark | Registration Date |
| --- | --- | --- |
| 4,112,054 | 100% (Class 9) | March 13, 2012 |
| 4,140,306 | ACCURI (Class 9) | May 8, 2012 |
| 4,455,791 | STRATA (Class 9) | December 24, 2013 |
| 4,740,495 | BRISKER (Class 25) | May 19, 2015 |
| 4,832,739 | SPEEDCRAFT (Class 9) | October 13, 2015 |
| 5,486,069 | RACECRAFT (Class 9) | June 5, 2018 |
| 5,856,837 | HIPER (Class 9) | September 10, 2019 |
| 5,946,141 | RACETRAP (Class 9) | December 24, 2019 |
| 5,955,540 | (Class 9) | January 7, 2020 |
| 6,248,245 | 100% (Class 25) | January 19, 2021 |

24.     Speedlab is the owner of Plaintiffs' Patents (attached as Exhibit 2), as follows:

| U.S. Pat. No. | Claim | Issue Date |
|---|---|---|
| D727,398 S | | April 21, 2015 |
| D727,400 S | | April 21, 2015 |
| D756,445 S | | May 17, 2016 |

7

| U.S. Pat. No. | Claim | Issue Date |
|---|---|---|
| D860,302 S | | September 17, 2019 |

## PLAINTIFFS' PRODUCTS

25.    Plaintiffs' brand (the "100% brand") dates back to 1982, when it first gained fame and recognition as the sponsor of multiple motocross racing teams and racers. Plaintiffs acquired the 100% brand in 2010 and, in 2012, launched a revamped line of products for the 100% brand. Since then, Plaintiffs have created premium sports equipment designed for motocross, bicycling, snowmobiling, and other racing events. Among other things, Plaintiffs develop, manufacture, and market a line of goggles, glasses, and gloves incorporating the 100% IP (the "100% Products" or "Plaintiffs' Products"). Each of the 100% Products bears at least Plaintiffs' mark of "100%" in text (covered by U.S. Trademark Registration No. 4,112,054). The 100% Products and the 100% brand have won design awards. For example, Plaintiffs' SPEEDCRAFT® sunglasses were recognized with a 2016 Design & Innovation Award and were awarded "Best Sport Frame" trophy at the Monaco Gala of Opticians in 2018. The 100% Products include the following:

8

| Product Name | Product Image | Trademark/Patent Registration No. |
|---|---|---|
| **RACECRAFT® Goggles** | | U.S. TM Reg. No. 5,486,069 |
| **SPEEDCRAFT® Sunglasses** | | U.S. TM Reg. No. 4,832,739; U.S. Pat. Nos. D727,400 S |
| **SPEEDTRAP® Sunglasses** | | U.S. Pat. No. D860,302 S |

26.    From the date of creation of the first of Plaintiffs' Products to the present, Plaintiffs, and their authorized distributors and retailers, have been the sole and official sources of Plaintiffs' Products in the United States and across the globe, which include, among others, the RACECRAFT® Goggles, SPEEDCRAFT® Sunglasses, and SPEEDTRAP® Sunglasses.

9

Plaintiffs' Products set themselves apart in the industry through their innovative design and distinctive branding. They are created with durability, while also maintaining an original iconic style, as depicted below:





*Exemplary Images of Plaintiffs' Products Using*
*Trademarked Branding and Patented Technology*

27.    High-quality products incorporating at least one of Plaintiffs' Trademarks have been used in commerce since at least 1982. Plaintiffs' Trademarks are and have been the subject of substantial and continuous marketing and promotion by Plaintiffs in the industry and to consumers.

28.    The registrations for Plaintiffs' Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b).

29.    Each of Plaintiffs' Trademarks qualifies as a famous mark, as that term is used in 15 U.S.C. § 1125(c)(1), and each has been continuously used and never abandoned. Since Plaintiffs launched Plaintiffs' Products, Plaintiffs have followed a defined strategy for positioning their brand, marketing and promoting the product line in the industry and to consumers, and establishing distribution channels. Plaintiffs' promotional efforts for Plaintiffs' Products include substantial print media, the www.100percent.com and social media websites, point-of-sale materials, and exhibition booths at international trade shows and racing events. Plaintiffs also sponsor athletes

11

across multiple sports, including motocross, mountain biking, road bike racing, and triathlons. Plaintiffs have expended substantial time, money, and other resources in advertising and otherwise promoting Plaintiffs' Products.

30.    Plaintiffs' Products have become enormously popular, driven by Plaintiffs' arduous quality standards and innovative trademarked and patented designs. These designs are broadly recognized by consumers as being sourced from Plaintiffs, whether through direct-to-consumer sales, wholesale to authorized retailers, or premium promotion to authorized distributors. Products fashioned after these designs are associated with the quality and innovation that the public has come to expect from Plaintiffs and Plaintiffs' Products.

31.    Plaintiff Saule owns all rights, including without limitation, the rights to reproduce the trademarked designs in copies, to prepare derivative works based upon the trademarked designs, and to distribute copies of the trademarked designs to the public by sale or other transfer of ownership, or by rental, lease, or lending, in Plaintiffs' Trademarks as the owner of those trademarks.

32.    Plaintiff Speedlab is the owner and lawful assignee of all right, title, and interest in and to Plaintiffs' Patents. Speedlab also holds an exclusive license from Saule to use the 100% Trademarks.

33.    Plaintiffs' Products in many instances embody at least a portion of the designs depicted in Plaintiffs' Patents.

## THE DEFENDANTS

34.    Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

35.     Defendants are merchants on online e-commerce platforms, including the Marketplace Platforms.

## THE DEFENDANTS' UNLAWFUL CONDUCT

36.     The success of Plaintiffs' Products has resulted in significant counterfeiting. Plaintiffs have identified numerous Defendant Internet Stores linked to fully interactive websites on e-commerce websites including the Marketplace Platforms. These Defendant Internet Stores offer for sale, sell, and/or import Counterfeit Products to consumers in this Judicial District and throughout the United States.

37.     Defendants have persisted in creating such online marketplaces and internet stores that contribute to the hundreds of billions of dollars of counterfeit goods sold each year. According to an intellectual property rights seizures statistics report issued by U.S. Customs and Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was approximately $5.4 billion, and over $5 billion of seized goods came from China and Hong Kong alone. *See* Declaration of Christopher Tom ("Tom Decl."), filed simultaneously with this Complaint, Ex. 2.

38.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine versions of Plaintiffs' Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

39.     Plaintiffs have not licensed or authorized Defendants to use Plaintiffs' Trademarks or Plaintiffs' Patents. None of the Defendants are authorized distributors or retailers of the genuine versions of Plaintiffs' Products.

40.     Defendants also deceive unknowing consumers by using, without any authorization, Plaintiffs' Trademarks within the product descriptions, content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for Plaintiffs' Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine versions of Plaintiffs' Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down.

41.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their domain names and/or User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

42.     Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

43. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

44. In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[2]

45. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received.[3] Rogue servers are notorious for ignoring take down demands sent by brand owners.

46. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. According to the previously cited 2024 U.S. Customs and Border Protection report on seizure statistics, in fiscal year 2024, "97% of [Intellectual Property Rights] seizures in the cargo environment occurred in the de minimis shipments." *See* Tom Decl. Ex. 2. Further, counterfeiters such as Defendants typically operate

---

[2] *Buyers Beware! ICE HIS and CBP in Boston warn consumers about counterfeit goods during holiday shopping season*, U.S. Immigration and Customs Enforcement (Dec. 11, 2019) https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (last visited Jun. 30, 2026) (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate goods on legitimate websites").

[3] Rogue internet servers and sellers are a well-known tactic that have even been covered in Cabinet-level agency reports. *See* 2023 Review of Notorious Markets for Counterfeiting and Piracy (available online at https://ustr.gov/sites/default/files/2023_Review_of_Notorious_Markets_for_Counterfeiting_and_Piracy_Notorious_Markets_List_final.pdf) (last visited Jun. 30, 2026).

multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

47.    On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside the jurisdiction of this Court. Analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

48.    Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use Plaintiffs' IP in connection with the advertisement, distribution, offering for sale, and/or sale of Counterfeit Products into the United States and New York over the internet.

49.    Each Defendant Internet Store offers shipping to the United States, including New York in this Judicial District, and each Defendant has offered to sell counterfeit versions of Plaintiffs' Products into the United States, including New York in this Judicial District.

50.    Defendants' use of Plaintiffs' Trademarks and/or Plaintiffs' Patents in connection with the advertising, distribution, offering for sale, and/or sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

51.    Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff PMI's ownership of Plaintiffs' Trademarks and Plaintiffs' Patents, of the fame and incalculable goodwill associated therewith and of the popularity and success of Plaintiffs' Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

16

52.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs and Plaintiffs' Products.

**FIRST CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114 *et seq.*)**
**[Against Defendants Designated in Schedule A to the Complaint]**

53.     Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–52 of this Complaint.

54.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of Plaintiffs' Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiffs' Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiffs' Products provided under Plaintiffs' Trademarks.

55.     Defendants have sold, offered to sell, marketed, distributed, and/or advertised, and are still selling, offering to sell, marketing, distributing, and/or advertising products in connection with Plaintiffs' Trademarks without Plaintiffs' permission.





*Exemplars of Genuine Products Incorporating Plaintiffs' Trademarks*

*COMPARED TO*



*Exemplars of Counterfeit Products Sold by Defendants Infringing Plaintiffs' Trademarks*

56. Plaintiff Saule is the registered owner of Plaintiffs' Trademarks and Plaintiffs and their authorized distributors and retailers are the official source of Plaintiffs' Products. The U.S. Registrations for Plaintiffs' Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in Plaintiffs' Trademarks and are willfully infringing and intentionally using counterfeits of Plaintiffs' Trademarks. Defendants' willful, intentional, and unauthorized use of Plaintiffs' Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

57. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

58. The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and/or sale of Counterfeit Products.

59. Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known 100% Trademarks.

## SECOND CAUSE OF ACTION
### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a) *et seq.*)
### [Against Defendants Designated in Schedule A to the Complaint]

60. Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–52 of this Complaint.

61. Defendants' promotion, marketing, offering for sale, and/or sale of counterfeit versions of Plaintiffs' Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

62.     By using Plaintiffs' Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

63.     Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

64.     Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

### THIRD CAUSE OF ACTION
### DESIGN PATENT INFRINGEMENT (35 U.S.C. § 271)
### [Against Defendants Designated in Schedule A to the Complaint]

65.     Plaintiffs repeat and incorporate by reference herein there allegations contained in paragraphs 1–52 of this Complaint.

66.     Defendants are and have been making, using, selling, offering for sale, and/or importing into the United States for subsequent sale or use, without authority, Counterfeit Products that infringe directly and/or indirectly Plaintiffs' Patents.

67.     For example, below is a comparison of figures from Plaintiffs' Patents and images of the Defendants' Counterfeit Products sold on the Defendant Internet Stores.

21





*Figures from Plaintiffs' Patents*

*COMPARED TO*



*Exemplary Counterfeit Products Sold by Defendants Infringing Plaintiffs' Patents*

68.    Defendants' activities constitute willful patent infringement under 35. U.S.C. § 271.

69.    Defendants have infringed Plaintiffs' Patents through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused

Plaintiffs to suffer irreparable harm resulting from the loss of their lawful patent rights to exclude others from making, using, selling, offering for sale, and/or importing the patented inventions.

70.    Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283.

71.    Plaintiffs are entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. § 289, including Defendants' profits.

**FOURTH CAUSE OF ACTION**
**UNFAIR COMPETITION (New York Common Law)**
**[Against Defendants Designated in Schedule A to the Complaint]**

72.    Plaintiffs repeat and incorporate by reference herein their allegations contained in paragraphs 1–52 of this Complaint.

73.    Plaintiffs have not licensed or authorized Defendants to use Plaintiffs' Trademarks, and none of the Defendants are authorized distributors or retailers of genuine versions of Plaintiffs' Products.

74.    Defendants knowingly and intentionally trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' Trademarks.

75.    Defendants' promotion, marketing, offering for sale, and/or sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

76.    Defendants knew, or should have known, that their promotion, marketing, offering for sale, and/or sale of Counterfeit Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

77.    In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiffs' Products including, for example, by (i) using SEO tactics and social media to misdirect customers seeking Plaintiffs' Products to the Defendant

24

Internet Stores; (ii) using deceptive advertising practices within the text and metadata of the Defendant Internet Stores; and (iii) taking other steps to deceive and confuse the consuming public.

78.    On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

79.    Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## DEMAND FOR RELIEF

80.    Plaintiffs hereby demand judgment as follows:

    a. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from

        i. using Plaintiffs' Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine version of Plaintiffs' Products or is not authorized by Plaintiffs to be sold in connection with Plaintiffs' Trademarks;

        ii. passing off, inducing, or enabling others to sell or pass off any product as a genuine version of Plaintiffs' Products or any other product

25

produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs' Trademarks;

iii. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

iv. further infringing Plaintiffs' Trademarks and damaging Plaintiffs' goodwill; and

v. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' trademarks, including Plaintiffs' Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof.

b. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from

i. making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiffs and that include any reproduction, embodiment, copy, or colorable imitation of the designs claimed in Plaintiffs' Patents;

26

ii. passing off, inducing, or enabling others to sell or pass off any product as a genuine version of Plaintiffs' Products or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs' Patents;

iii. further infringing Plaintiffs' Patents and damaging Plaintiffs' goodwill;

iv. aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiffs' Patents; and

v. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which infringe Plaintiffs' Patents.

c. Entry of an Order that the Marketplace Platforms, including without limitation eBay, Shein, Temu, TikTok, and any other online marketplace account through which Defendants are selling Counterfeit Products disable and cease displaying any advertisement used by or associated with Defendants in connection with their sale of Counterfeit Products;

d. That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiffs' Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

e.  That Plaintiffs be awarded all infringing profits realized by Defendants from Defendants' infringement of Plaintiffs' Patents, pursuant to 35 U.S.C. § 289;

f.  In the alternative, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of Plaintiffs' Trademarks; and statutory damages pursuant to 35 U.S.C. § 289 of not less than $250 for each and every use of Plaintiffs' Patents;

g.  That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

h.  Award any and all other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

81.  Plaintiffs hereby demand a trial by jury.

Dated:  June 30, 2026                    Respectfully,

*/s/ Christopher Tom*
Christopher Tom, Esq. (S.D.N.Y. Bar No. CT1983)
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300
ctom@bsfllp.com

*Counsel for Plaintiffs, 100% Speedlab, LLC and Saule, LLC*